## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

In re:

CECIL THOMPSON,                          Case No. 6:05-bk-16719-ABB
                                         Chapter 7

      Debtor.

_____/

## MEMORANDUM OPINION

This matter came before the Court on the Emergency Motion to Reopen Case and the Motion for Contempt (Doc. Nos. 56, 73) filed by Cecil Thompson, the *pro se* Debtor ("Cecil"), alleging John R. Hefferan, Jr. ("Hefferan") willfully violated the discharge injunction of 11 U.S.C. Section 524(a) and is in contempt of Court.[1]  A hearing was held on November 30, 2009 at which Cecil and Hefferan appeared.

Sanctions are due to be imposed against Hefferan for his willful violations of the discharge injunction and orders of this Court.  The Court makes the following Findings of Fact and Conclusions of Law after reviewing the pleadings and evidence, hearing live proffers and argument, and being otherwise fully advised in the premises.

## FINDINGS OF FACT

### *Synopsis*

This sanctions matter derives from the divorce of Cecil and Valarie Thompson ("Valarie") and a series of attorney fee awards entered by the Florida State Court for fees incurred by Hefferan as Valarie's divorce counsel.  Cecil and Valarie, post-divorce, each filed for Chapter 7 bankruptcy protection and received discharges.  Cecil and Valarie, during the pendency of Cecil's bankruptcy case (in which Valarie filed an adversary

_____
[1] The parties filed numerous responses and accountings (Doc. Nos. 71, 72, 74, 77, 78, 80, 84).

proceeding against Cecil), executed a global settlement agreement resolving all of their issues and pursuant to which Valarie released Cecil from any attorney's fees indebtedness. The Florida State Court entered an order approving and ratifying their settlement agreement.

Hefferan participated in the bankruptcy cases. His attorney fee claims were discharged. Neither Cecil nor Valarie is indebted to Hefferan for any amount pursuant to their settlement agreement, the Florida State Court's approval and ratification of the Settlement Agreement, and their Chapter 7 discharges. Hefferan has attempted to collect the discharged fees from Cecil in violation of the discharge injunction. His actions have been willful and egregious and warrant the imposition of significant sanctions.

### Florida State Court Proceedings: Fee Awards

Cecil instituted a divorce proceeding against Valarie in 2003 in the Circuit Court of the Eighteenth Judicial Circuit in and for Seminole County, Florida.[2] Four orders awarding attorney's fees for Hefferan's services were entered (collectively, "State Court Fee Orders"):

(i)   *March 4, 2005*: Order for Temporary Attorney's Fees entered against Cecil and in favor of Valarie awarding Valarie temporary attorney's fees of $15,000.00 to be paid directly to Hefferan.[3]

(ii)  *August 29, 2006*: Corrected Order on Motion for Temporary Attorney's Fees granting Valarie's request for additional attorney's fees of $15,000.00 and directing Cecil to pay such fees at the rate of $1,000.00 per month.[4]

(iii) *March 9, 2007*: Order Adjudicating Charging Lien entered against Valarie and in favor of Hefferan for $28,126.00, plus interest at the legal rate:

---

[2] *Cecil Thompson v. Valarie H. Thompson*, Case No. 03-2270-DR-02-W.
[3] Attachment to Hefferan's Claim No. 4-1 at ¶17.
[4] Doc. No. 74, August 29, 2006 Corrected Order at p. 2.

> as the remainder of [Hefferan's] reasonable attorney's fees
> . . . [Hefferan] has established and shall have a valid
> Attorney's Charging Lien for said total sum due
> ($28,216.00) directly from Valarie Thompson, which shall
> be payable from and attach to or to be distributed to all of
> Valarie Thompson's right, title, and interest in [and to] any
> and all assets distributed to Valarie Thompson by virtue of
> any adjudication or settlement in this cause which are
> proceeds to be received by Valarie Thompson either by
> way of equitable distribution, lump-sum alimony
> immediately distributed to [Valarie] at Final Judgment.[5]

(iv)   *November 9, 2009*: Final Summary Judgment entered against
Cecil and in favor of Hefferan for $27,258.31 plus accumulated
interest of $7,218.16, with interest to accrue at the rate of nine
percent.[6]

The State Court Fee Orders do not specify the fee awards are for, or are in the nature of,

alimony, maintenance, or support for Valarie or a child.

Cecil appealed the March 9, 2007 Charging Lien Order to the Fifth District Court

of Appeals of the State of Florida ("Fifth DCA").[7]   It appears from the parties'

submissions the appeal was stayed by the Fifth DCA pending the outcome of this

sanctions matter.[8]

The State Court Fee Orders are interrelated in that each order is predicated upon

the previous order: the August 29, 2006 Corrected Order contains the original 2005 fee

award of $15,000.00, plus additional temporary attorney's fees of $15,000.00; the 2007

---

[5] Doc. No. 64, March 9, 2007 Charging Lien Order at ¶¶3, 4.

[6] Doc. No. 64, November 9, 2009 Final Summary Judgment.

[7] *Cecil Thompson v. John R. Hefferan, Jr., et al.*, Case No. 5D0-4413.

[8] The parties presented partial copies of various State Court pleadings from which it appears Cecil and Valarie jointly appealed the March 9, 2007 Charging Lien Order to the Fifth DCA, captioned *Cecil Thompson and Valarie Thompson v. John R. Hefferan, Jr.*, Appellate Case No. 5D07-1248 (Doc. No. 65). The parties did not delineate the status of this appeal.

Charging Lien Order contains the fees awarded pursuant to the 2005 and 2006 Temporary Fee Orders, plus additional fees incurred by Hefferan and interest; the 2009 Final Summary Judgment contains the Charging Lien Order award, plus additional fees incurred by Hefferan and interest. The original 2005 fee award of $15,000.00 is a component of all three subsequent fee orders.

### *Florida State Court Proceedings:  Settlement Agreement*

Valarie terminated Hefferan's services on November 6, 2006.[9]  Cecil and Valarie executed a Settlement Agreement on November 7, 2006.[10]  They executed the Settlement Agreement while Cecil's bankruptcy case and a related adversary proceeding were pending.  The Settlement Agreement:  (i) resolves all of their divorce and bankruptcy issues; (ii) provides Cecil is to pay $48,000.00 to Valarie through installment payments; and (iii) resolves attorney fee issues:

> Each party agrees that they shall be solely responsible for any and all attorney's fees or costs incurred by them whether in the action pending before the Circuit Court of Seminole County, Florida or in the United States Bankruptcy Court for the Middle District of Florida.  This shall include such sums as may have been heretofore ordered on a temporary or permanent basis by either the Circuit Court in and for Seminole County, Florida or in the United States Bankruptcy Court for the Middle District of Florida.  Specifically but not as a limitation [Valarie] as further consideration for this Agreement does hereby waive[] the payment and benefit of and releases [Cecil] from the obligation of that certain order entered by the Circuit Court of Seminole County Florida bearing the case number set forth herein above bearing [the] date of August 29, 2006.[11]

Valarie and Cecil filed the Settlement Agreement in their Florida State Court divorce proceeding.  The Florida State Court entered a Final Judgment Establishing

---

[9] *See* AP Doc. No. 36, Ex. A.  All docket entries cited in this section refer to the CM/ECF docket entries for Adversary Proceeding No. 6:06-ap-00052-ABB.
[10] AP Doc. No. 36, Ex. B.
[11] AP Doc. No. 36, Ex. B at p. 11, ¶18.

Paternity, Dissolving Marriage and Adopting Settlement Agreement on November 30, 2006 ("Settlement Agreement Order") in which the Florida State Court approved, ratified and incorporated the Settlement Agreement.[12]  The Settlement Agreement Order has a *nunc pro tunc* effective date of July 7, 2003 and provides, in part:

> Except for the dissolution of marriage, this Court retains jurisdiction of the parties and the subject matter of this cause for the enforcement of the terms and conditions set forth in the Settlement Agreement, this Final Judgment, to adjudicate the Notice and Claim of Attorney Fees Charging Lien filed by John R. Hefferan, to adjudicate any claims or objections to that certain Amended Order entered by this Court on August 29, 2006 and for the subsequent entry of a Qualified Domestic Relations Order.[13]

The Settlement Agreement and the Settlement Agreement Order were uncontested.  The Florida State Court, by approving the Settlement Agreement *nunc pro tunc* as of July 7, 2003, voided and released Cecil from any liability to Valarie for the attorney's fees relating to the March 4, 2005 and August 29, 2006 Temporary Fee Orders.

### Bankruptcy Cases

Cecil and Valarie filed separate Chapter 7 bankruptcy cases while the Florida State Court proceedings were pending.  Cecil filed his case in 2005 and Valarie filed her case in 2009.  Hefferan was actively involved in both cases attempting to collect the fee awards.  He:  (i) filed proofs of claim in each case; (ii) instituted adversary proceedings against Cecil and Valarie; and (iii) sought relief from the automatic stay in Valarie's case to pursue the fee litigation in the Florida State Court.

### Cecil Thompson's Bankruptcy Case

Cecil filed his bankruptcy case on October 15, 2005.  Hefferan filed an unsecured priority claim of $15,000.00 based upon the March 4, 2005 Temporary Fee Order.  The

---

[12] AP Doc. No. 36, Ex. C.
[13] Id. at ¶10.

5

Chapter 7 Trustee objected to the claim on the basis the priority designation was unsubstantiated pursuant to 11 U.S.C. Section 507. The Trustee's objection contained a negative notice provision pursuant to Local Rule 2002-4 and was served on Hefferan.

Hefferan did not respond. The objection was sustained and Hefferan was adjudicated to have a general unsecured claim of $15,000.00 pursuant to this Court's November 8, 2006 Order. Hefferan did not seek reconsideration or appeal of the November 8, 2006 Order and it constitutes a final, non-appealable order.

The Chapter 7 Trustee recovered assets in Cecil's bankruptcy case and distributed estate funds to the holders of allowed claims. Hefferan received a distribution of $867.69 and the remaining indebtedness of his allowed claim, $14,132.31, was discharged pursuant to the discharge entered on March 14, 2006. The discharge injunction of 11 U.S.C. Section 524(a) arose by operation of law on March 14, 2006. The Discharge Order advised parties of the discharge injunction in large bold-face underlined type:

### Collection of Discharged Debts Prohibited

> The discharge prohibits any attempt to collect from the debtor a debt that has been discharged. For example, a creditor is not permitted to contact a debtor by mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other property, or to take other action to collect a discharged debt from the debtor. . . . A creditor who violates this order can be required to pay damages and attorney's fees to the debtor.[14]

The Discharge Order was issued to Hefferan on March 16, 2006.

### *Adversary Proceeding No. 6:06-ap-00052-ABB*

Hefferan, as counsel for Valarie, instituted an adversary proceeding against Cecil in Cecil's bankruptcy case alleging Cecil fraudulently transferred the marital home.[15]

---

[14] Doc. No. 17.

[15] *Valerie H. Thompson v. Cecil Thompson,* AP No. 6:06-ap-00052-ABB, instituted on January 30, 2006.

The Complaint contains a nondischargeability cause of action, Count IV, asserting the March 4, 2005 Temporary Fee Order for $15,000.00 is non-dischargeable pursuant to 11 U.S.C. Section 523(a).

Cecil and Valerie entered into their global Settlement Agreement while this adversary proceeding was pending. They filed a joint Stipulation requesting the adversary proceeding be dismissed based upon the Settlement Agreement and the Settlement Agreement Order. Hefferan filed a Motion to Withdraw as Valarie's counsel in which he asserted a charging lien against Valarie. A hearing was held at which Hefferan appeared. This Court: (i) granted Hefferan's withdrawal motion; (ii) ruled he was not allowed a charging lien against Cecil; and (iii) approved the Stipulation and dismissed the adversary proceeding.

Hefferan did not pursue adjudication of the 11 U.S.C. Section 523(a) non-dischargeability cause of action. He did not oppose dismissal of the adversary proceeding. The adversary proceeding was closed on May 14, 2007.

*Final Report:* The Trustee's Final Report filed in Cecil's main case was unopposed and approved by the Court on September 10, 2007. Cecil's bankruptcy case was closed on September 10, 2007.

### *Valarie Thompson's Bankruptcy Case*

Valarie filed her bankruptcy case on February 27, 2009 and listed Hefferan as a general unsecured creditor for $28,000.00.[16] Hefferan filed a secured claim for $34,215.84 based upon the March 9, 2007 Charging Lien Order. The Chapter 7 Trustee

---

[16] *In re Valarie H. Thompson*, Case No. 6:09-bk-02281-ABB.

declared Valarie's case a no asset case and there will be no distribution to the holders of allowed claims in this case.

Hefferan filed a motion seeking relief from the automatic stay of 11 U.S.C. Section 362(a) to "proceed with pending state court summary proceedings for enforcement and collection of attorney's charging lien . . . ."[17] Valarie objected to the motion asserting Hefferan was attempting to collect the fees discharged in Cecil's bankruptcy case. Hefferan asserted the charging lien does not relate to the fees discharged in Cecil's bankruptcy case.

A hearing was held on June 1, 2009 at which Hefferan and Valarie appeared. This Court, relying upon Hefferan's representation the charging lien does not involve bankruptcy issues that had been previously determined, but solely relates to post-petition Florida State Court divorce issues, granted Hefferan's motion, in part, in open Court to allow Hefferan to proceed against Cecil only, not Valarie, in the Florida State Court. Hefferan was directed to submit a proposed order.

No written order of the Court's ruling was entered due to Hefferan's failure to submit a proposed order.[18] The ruling made in open Court does not constitute an order of this Court. The entry of a written order was required to effectuate the granting of stay relief. The automatic stay remained in effect and Hefferan had no authority to pursue the Florida State Court summary judgment action.

---

[17] Doc. No. 13, p. 1. The motion was abated pursuant to the Order entered on May 1, 2009 due to Hefferan's failure to timely pay the requisite filing fee of $150.00. The filing fee was received on May 12, 2009.

[18] Hefferan was required to submit a proposed order within three days of the hearing pursuant to Local Rule 9072-1(c).

This Court would not have issued the open-Court ruling granting Hefferan partial stay relief had Hefferan presented a complete and accurate account of the Florida State Court event chronology, the precise rulings of the Florida State Court, the effect of Cecil's discharge with respect to the State Court Fee Orders, and the effect of the Settlement Agreement as approved and ratified by the Settlement Agreement Order.

Hefferan presented piecemeal and disjointed information to this Court throughout Cecil's and Valarie's bankruptcy cases. It has only been through this sanctions proceeding that this Court, with the expenditure of much time and effort, has been able to elucidate the Florida State Court event chronology and determine how those events intersect with Cecil's and Valerie's bankruptcy cases.

Valarie was granted a discharge on July 31, 2009 and the discharge injunction of 11 U.S.C. Section 524(a) arose by operation of law. Her bankruptcy case has been fully administered by the Chapter 7 Trustee, but remains open due to the related adversary proceeding instituted by Hefferan against Valarie.

### *Adversary Proceeding No. 6:09-ap-00741-ABB*

Hefferan instituted an adversary proceeding against Valarie in her bankruptcy case seeking to enforce the charging lien and a determination attorney's fees claim is nondischargeable as to Valarie pursuant to 11 U.S.C. Section 523(a)(2).[19] The adversary proceeding was dismissed pursuant to the Order entered on August 14, 2009 and was closed on October 30, 2009.

The dismissal order was entered in error. Hefferan did not timely pay the requisite adversary proceeding filing fee of $250.00 and the Court issued a deficiency

---

[19] *John R. Hefferan v. Valarie H. Thompson*, AP No. 6:09-ap-00741-ABB.

notice on May 1, 2009 directing him to remit the filing fee. Hefferan paid the filing fee on May 5, 2009.[20] The adversary proceeding is due to be reopened and the Court will issue a notice to determine whether Hefferan intends to pursue the adversary proceeding.

### Effect of the Discharge Orders

Cecil and Valarie were granted Chapter 7 discharges pursuant to 11 U.S.C. Section 727 discharging them from all debts that arose before their petition dates. They are protected by the discharge injunction of 11 U.S.C. Section 524, which enjoins any and all acts to collect a discharged debt and nullifies and voids all judgments containing a discharged debt.

None of Cecil's and Valarie's debts have been excepted from discharge. The State Court Fee Orders do not designate the attorney fee awards as, or in the nature of, alimony, maintenance, or support. No debt is excepted from discharge pursuant to 11 U.S.C. Section 523(a) unless and until a Court order is issued determining the debt to be nondischargeable. This Court has entered no orders determining the fee awards to be nondischargeable pursuant to 11 U.S.C. Section 523. Cecil's and Valarie's pre-petition debts have been discharged. Any and all prepetition debts owed by Cecil and/or Valarie to Hefferan have been discharged.[21]

The State Court Fee Orders are unenforceable pursuant to the Settlement Agreement, the Settlement Agreement Order, and Cecil's and Valarie's discharge orders.

---

[20] The October 30, 2009 Order entered in Valarie's main bankruptcy case approving the Trustee's no distribution report and closing the main case was vacated on December 21, 2009 to remedy the adversary proceeding dismissal error. A main bankruptcy case may not be administratively closed by the Bankruptcy Court while any adversary proceeding issues are pending, pursuant to Court protocol.

[21] Hefferan filed a claim for $15,000.00 in Cecil's bankruptcy case, but he had incurred fees of $28,246.00 as of Cecil's petition date of October 15, 2005. Any indebtedness owed by Cecil to Hefferan that arose prior to Cecil's petition date was discharged.

***Temporary Fee Awards:*** The March 4, 2005 and August 29, 2006 Temporary Fee Orders were entered in favor of Valarie. Valarie, pursuant to the Settlement Agreement and the Settlement Agreement Order, waived her rights to these fee awards and released Cecil from any and all liability. The March 4, 2005 and August 29, 2006 Temporary Fee Orders contain fees that were discharged in Cecil's bankruptcy case. Cecil has no liability to Valarie or Hefferan for the March 4, 2005 or August 29, 2006 Temporary Fee Orders pursuant to the Settlement Agreement, Settlement Agreement Order, and the bankruptcy discharges.

***Charging Lien Order:*** The March 9, 2007 Charging Lien Order was entered *against Valarie,* not Cecil, and in favor of Hefferan. The charging lien attached to *Valarie's assets*, not Cecil's assets. The Charging Lien Order is comprised of Hefferan's fees that were discharged pursuant to Cecil's and Valarie's discharges. The Charging Lien Order is not enforceable against Cecil pursuant to the plain and unambiguous language of the Charging Lien Order and the bankruptcy discharges.

***Final Summary Judgment:*** The only State Court Fee Order entered against Cecil—the November 9, 2009 Final Summary Judgment—was entered after Cecil's discharge. Section 524(a) of the Bankruptcy Code voids any judgment to the extent it is a determination of the personal liability of the debtor with respect to any debt discharged. The Final Summary Judgment is null and void pursuant to Section 524 because: (i) it is a determination of the personal liability of Cecil; and (ii) it contains Hefferan's prepetition fees that were discharged pursuant to Cecil's discharge. Every action Hefferan took in the Florida State Court post-Cecil's discharge was in violation of Cecil's discharge injunction pursuant to Section 524.

11

Cecil and Valarie, based upon the terms of the Settlement Agreement, as approved and ratified by the Florida State Court, and their bankruptcy discharges, are not indebted to Hefferan for any amount. Any and all debts they may have owed to Hefferan have been fully extinguished through the Florida State Court's *nunc pro tunc* approval of their Settlement Agreement and their Chapter 7 discharges.

### Cecil's Motions

Cecil filed the Emergency Motion to Reopen his bankruptcy case immediately after the entry of the November 9, 2009 Final Summary Judgment. He asserts Hefferan's pursuit of him post-discharge in the Florida State Court summary judgment proceedings constitutes a willful violation of his discharge. Cecil contends the Final Summary Judgment award of $27,258.31 contains Hefferan's discharged fees. He requests an award of sanctions against Hefferan.

Cecil, during the pendency of this sanctions matter, filed a Motion for Contempt of Court asserting Hefferan continues to attempt to collect the discharged fees in violation of his bankruptcy discharge and this Court's December 1, 2009 Order in which the Court enjoined Hefferan "from taking any action to attempt to collect any attorney's fees or costs from the Debtor pursuant to 11 U.S.C. Sections 524(a) and 105(a)."[22] Hefferan received and reviewed the December 1, 2009 Order as established by his filing of his Response to the Order.

Cecil, in support of his Motion for Contempt, filed a letter from Hefferan to Cecil dated January 27, 2010. Hefferan issued the letter in response to Cecil's request for an extension of the Fifth DCA's briefing schedule, stating, in part:

---

[22] Doc. No. 62 at p. 3.

I firmly believe that you will not be successful in bankruptcy or in your appeal. The accurate facts and case law does [sic] not support your position. I fully intend to ask for additional attorney's fees on this appeal. The law supports this request and should be granted. This should add several thousand dollars to what you currently owe.

Instead of wasting further money on another lawyer developing a novel appellate brief that you will sign as your own you should consider using those funds to satisfy this debt. As I told Mr. Greene I would accept $30,000.00 to settle the case. This is over $4,000.00 less than your current obligation, which is growing by 9% annually and will be even higher with you're the [sic] current attorney's fees for having the brief drawn-up and the additional fees I will be asking for in preparing my reply brief. It is your choice. "Pay now or pay me later."[23]

Hefferan filed with the Fifth DCA an Objection to Cecil's extension request:

When and if any order is entered in the bankruptcy proceedings it will either deny [Cecil's] motion for emergency relief or schedule a hearing on the Appellant's Emergency Motion to allow [Hefferan] the opportunity to present his case challenging the Appellant's Emergency Motion which hearing will be scheduled at some unknown time in the future and if the ruling is against the Appellee it will result in an appeal in that court.
It is [Hefferan's] opinion that [Cecil's] request in bankruptcy is in bad faith and without merit as he has misrepresented the facts and either does not understand the application of the case law to his factual situation and/or is simply trying to buy additional time to avoid paying this debt.[24]

Hefferan's representations regarding the status of the sanctions matter are not accurate.

He represented to the Fifth DCA no hearing had been set or held on Cecil's Emergency Motion to Reopen. A hearing had been held by this Court on November 30, 2009, at which Hefferan and Cecil appeared, and the matter was taken under advisement. This Court, in open Court with Hefferan present, directed him to file a detailed accounting of his fees and enjoined the parties from taking any further action in the Florida State Court until the sanctions matter had been adjudicated. A written Order was entered on December 1, 2009 setting forth these rulings.

---

[23] Doc. No. 73 (Letter attachment).
[24] Id. (Objection attachment at ¶¶2, 3). Hefferan filed the Objection on or about February 4, 2010.

This Court, subsequent to the November 30, 2009 hearing and prior to Hefferan's filing of his Objection with the Fifth DCA, issued two Orders directing Hefferan to submit additional information. Hefferan knew when he filed his Objection with the Fifth DCA the November 30, 2009 hearing had been concluded, he was enjoined from taking any action in the Florida State Court, the parties had briefed their positions, and the entry of an order from this Court adjudicating the sanctions matter was forthcoming.

### *Hefferan's Responses*

This Court, pursuant to its ruling in open Court on November 30, 2009 and its Orders entered on December 1, 2009 and February 1, 2010, directed Hefferan to provide information regarding his fees, including whether the State Court Fee Orders contain any discharged fees and whether he has made any attempt to collect discharged fees. This Court's requests called for the submission of precise, straightforward information.

Hefferan failed to provide coherent and straightforward responses to the Court's inquiries. He filed several pleadings accompanied by voluminous exhibits. His pleadings are disjointed and contain contradictory statements. His exhibits consist of inaccurate and inconsistent billing records and copies of Florida State Court pleadings, most of which are incomplete.

The focus of Hefferan's submissions is Cecil's alleged diversion of the settlement funds. Hefferan asserts: (i) Cecil was holding settlement funds of $48,000.00 pursuant to the Settlement Agreement; (ii) Hefferan holds a charging lien against those funds pursuant to the March 9, 2007 Charging Lien Order; (iii) Cecil should have satisfied the March 9, 2007 Charging Lien Order from the settlement funds, but instead, and in

14

collusion with Valarie, diverted the settlement funds to Valarie "ignoring Hefferan's superior charging lien."[25]

Hefferan repeatedly asserts Cecil, as a result of the alleged wrongful diversion of the settlement funds, is jointly and severally liable for the charging lien and the charging lien fee award, plus interest. He concedes his claim for attorney's fees of $15,000.00 was discharged in Cecil's bankruptcy case.[26]  He denies the November 9, 2009 Final Summary Judgment contains the fees discharged in Cecil's bankruptcy case and relates only to non-discharged fees.

Hefferan's billing records do not provide clear answers to the Court's inquiries and raise credibility issues.  Hefferan presented billing records for work performed relating to Valarie for the period August 18, 2003 through November 7, 2006.[27]  The records reflect he incurred 280.33 hours of attorney time and charges of $55,946.00 for his services billed at the rate of $200.00 per hour.  The records reflect an initial retainer payment of $5,000.00 and no other credits.

Hefferan presented a second set of billing records, which differ from his original billing records submission.  The revised billing records include:

(i)     additional billing entries for the period March 29, 2004 through November 18, 2004 resulting in additional charges of $1,014.00; and

(ii)    additional billing entries for "Thompson Bankruptcy" for the period January 17, 2006 through October 27, 2006 for charges of $3,200.00.[28]

---

[25] Doc. No. 64, ¶5.
[26] Doc. No. 64, ¶4.E.
[27] Doc. No. 64.
[28] Doc. No. 74, Ex. 6 "Revised Billing Statements."

The revised billing records show an initial retainer payment of $5,000.00 and no other credits despite Hefferan's admission he received payments totaling $21,867.69 from Cecil and Valarie.[29] Hefferan admits he failed to disclose the payments of $21,867.69 to the Florida State Court and the State Court Fee Orders should, but do not, reflect such payments.[30]

### *Analysis*

Hefferan has taken the position, as reflected by his January 2010 demand letter, he is entitled to seek collection from Cecil of all of the fees he incurred. His position is contrary to the underlying attorney-client relationship with Valarie, the plain language of the State Court Fee Orders, the Settlement Agreement, the Settlement Agreement Order, and the discharge injunctions that arose in Cecil's and Valarie's bankruptcy cases.

The core issue for determination is whether the March 9, 2007 Charging Lien Order and the November 9, 2009 Final Summary Judgment contain any discharged fees. The State Court Fee Orders do not set forth how the Florida State Court calculated Hefferan's fee awards or what information the Florida State Court relied upon in issuing the fee awards. It appears the Florida State Court relied upon three affidavits filed by Hefferan:

    (i)    *Affidavit of Attorney's Fees:* filed on or about February 25, 2005 in which Hefferan states he, as counsel for Valarie, incurred 76.73 hours billed at the hourly rate of $200.00 for total fees of $15,346.00. The Affidavit does not set forth the time period in which the fees were incurred.

---

[29] Doc. No. 74, p. 4.
[30] Doc. No. 74, p.5, ¶3.d.

16

     (ii)     *Supplemental Affidavit of Attorney's Fees:* filed on or about May 16, 2006 in which Hefferan states he incurred, in addition to the fees of $15,346.00 referenced in his original 2005 Affidavit, 118.60 hours billed at $200.00 per hour for a total of $23,700.00 for the period February 16, 2005 through May 17, 2006.

     (iii)    *Second Supplemental Affidavit of Attorney's Fees:* filed on or about February 16, 2007 in which Hefferan states he incurred, in addition to the fees delineated in his two previous Affidavits:

          a.   24.30 hours billed at $200.00 per hour for a total of $4,860.00 for the period May 17, 2006 through October 20, 2006; and

          b.   16 hours billed at $200.00 per hour for a total of $3,200.00 for services related to Valarie's bankruptcy case.[31]

Each Affidavit was filed in the Thompson's divorce proceeding and is based upon Hefferan's attorney-client relationship with Valarie. The Affidavits set forth Hefferan's billings were for "time devoted to this case . . . pursuant to the contract between [Valarie] and [Hefferan]."[32] The Affidavits are inter-related, with the Supplement and Second Supplemental Affidavits incorporating and building upon Hefferan's original 2005 Affidavit.

The Affidavits are incomplete and inaccurate. Each Affidavit references an "attached Schedule" that "accurately reflects the time and expenses incurred," but Hefferan did not provide the Schedules to this Court. Hefferan admits he received payments totaling $21,867.69 from Cecil and Valarie from 2003 through 2006, but his Affidavit and Supplemental Affidavit contain no credits for the payments received. The Second Supplemental Affidavit references credits of $19,000.00, which is incorrect and understates Hefferan's payment receipts by $2,867.69.

---

[31] Doc. No. 74.
[32] Id., Affidavit at ¶2, Supplemental Affidavit at ¶3, Second Supplemental Affidavit at ¶¶2,3.

Hefferan's Affidavits and the plain language of the State Court Fee Orders establish the State Court Fee Orders are inter-related. The Final Summary Judgment is based upon the March 9, 2007 Charging Lien Order, which is based upon the March 4, 2005 and August 29, 2006 Temporary Fee Orders:

(i)     The Final Summary Judgment sets forth in its opening paragraph it is based upon various submissions including the "Affidavits of Cecil Thompson and John Hefferan" and the "Order Adjudicating Charging Lien."[33]

(ii)    The Final Summary Judgment award of $27,258.31 consists of the fee award of $28,126.00 awarded in the Charging Lien Order less $867.69 received by Hefferan from the Chapter 7 Trustee.

(iii)   The Charging Lien Order is based upon Hefferan's previous awards of temporary attorney's fees in 2005 and 2006 and the fee calculations contained in his Supplemental Affidavit. The Order states:

> This Court ruled in two previous hearings for temporary attorney's fees held on March 1, 2005 and May 17, 2006 that the fees charged in the amount of $15,266.00 and $39,170.00 respectively were fair and reasonable . . . .
>
> This Court finds that the additional fees charged by Mr. Hefferan in the amount of $3,200.00 in the bankruptcy proceedings were fair and reasonable and were necessary to preserve claims initially filed in the instant action.
>
> This Court finds that the additional time charged by Mr. Hefferan in this action after the May 17, 2006 hearing in the amount of $4,627.00 are fair, reasonable, and necessary.[34]

Hefferan represented to the Florida State Court in each Affidavit he had incurred and was entitled to payment of attorney's fees. He presented the Affidavits to the Florida State Court with the intention the Florida State Court enter orders awarding fees. The Florida State Court entered the State Court Fee Orders based upon Hefferan's Affidavits.

---

[33] Doc. No. 64, Final Summary Judgment at p. 1.
[34] Doc. No. 64, Charging Lien Order at p. 2.

### *Summary*

Cecil and Valarie are not indebted to Hefferan for any amount.  Cecil is not indebted to Valarie for any of Hefferan's fees.

1.  Hefferan has no contractual privity with Cecil.  His client was Valarie.

2.  The 2005 and 2006 Temporary Fee Orders were entered against Cecil and in favor of Valarie, not Hefferan.

3.  The Charging Lien Order was entered against Valarie, not Cecil, and the charging lien attached to Valarie's assets, not Cecil's.

4.  Valarie released Cecil from all liability for the Temporary Fee Orders pursuant to the Settlement Agreement and the Settlement Agreement Order, effective *nunc pro tunc* as of July 7, 2003.

5.  Any and all prepetition indebtedness owed by Cecil to Hefferan was fully discharged in Cecil's bankruptcy case.

6.  The Charging Lien Order and Final Summary Judgment contain Hefferan's prepetition fees that were discharged pursuant to Cecil's discharge.

7.  Any and all prepetition indebtedness owed by Valarie to Hefferan was fully discharged pursuant to Valarie's discharge.

8.  Hefferan obtained the Final Summary Judgment against Cecil in violation of Cecil's discharge and it is null and void pursuant to 11 U.S.C. Section 524(a).

Hefferan has no claim against Cecil for any amount pursuant to his lack of contractual privity with Cecil, the Settlement Agreement, the Settlement Agreement Order, and Cecil's and Valerie's discharges.  Hefferan's fee claim has been fully extinguished as to both Cecil and Valarie.

### *Discharge Injunction Violations*

Hefferan received notice of Cecil's discharge and knew the discharge injunction of 11 U.S.C. Section arose by operation of law on March 14, 2006. He knew his prepetition fees were discharged in Cecil's bankruptcy case with the entry of Cecil's discharge. He has committed multiple willful violations of the discharge injunction, with an egregious violation occurring during the pendency of this sanctions proceeding.

Hefferan's discharge violations specifically include:

(i)     Filing in the Florida State Court and serving on Cecil a Notice of Charging Lien on or about November 13, 2006.

(ii)    Issuing to Cecil demand letters on November 29, 2006 and March 13, 2007 demanding payment of the discharged fees.[35]

(iii)   Filing motions against Cecil in the Florida State Court divorce proceedings to enforce the charging lien including an Amended Motion to Enforce Charging Lien, Entry of Final Judgment and Sanctions filed by Hefferan in the Florida State Court in 2008.[36]

(iv)    Instituting and pursuing a summary judgment proceeding in the Florida State Court against Cecil in 2009.

(v)     Appearing at hearings in the Florida State Court and causing the entry of the Final Summary Judgment on November 9, 2009.

(vi)    Issuing Cecil a demand letter on January 27, 2010 demanding payment of all of his attorney's fees and threatening to seek sanctions against Cecil in the Florida State Court.

Hefferan admitted in pleadings filed in the Florida State Court summary judgment proceeding against Cecil, he knew and understood his fee claim had been discharged by Cecil's discharge. Hefferan stated in a pleading filed in the Florida State Court on or about September 4, 2009:

---

[35] *See* Doc. No. 13 in Valarie's case.

[36] Id.

20

> Cecil Thompson further argues that he should receive[] credits for
> $14,132.21 for his discharge of the original amount he was
> order[ed] to pay to the undersigned for attorney's fees[.] [W]hile
> that may be appropriate if he had not colluded with Valarie
> Thompson to avoid her attorney's fee obligation incurred after his
> discharge but it would not be appropriate under these
> circumstances as his subsequent fraudulent acts occurred after his
> original bankruptcy discharge which is a new fraudulent act that he
> committed to help his ex-wife avoid her lawful obligation thus
> implicating him in their new scheme to defraud the undersigned of
> $28,426.00 secured by the Order Adjudicating Charging Lien
> issued almost a year after his bankruptcy action was concluded
> which would trump any get out of jail free card he received from
> the bankruptcy court.[37]

Hefferan, as established by this pleading, knew his original fee award had been

discharged by Cecil's discharge, but he represented to the Florida State Court he was

immune from the discharge injunction due to Cecil's alleged fraudulent acts regarding the

Settlement Agreement.

His representation was contrary to fundamental bankruptcy law and the plain and

unambiguous language of Cecil's Discharge Order. Any alleged wrongdoing by Cecil

with respect to the Settlement Agreement did not negate or diminish the effect of his

discharge. A debtor's discharge constitutes a discharge of all dischargeable debts unless

the Bankruptcy Court enters an order determining a particular debt is nondischargeable.

Hefferan knew any debt owed to him by Cecil or Valarie could only be excepted

from discharge through a judgment entered in his favor in an 11 U.S.C. Section 523(a)

nondischargeability adversary proceeding. He instituted a Section 523(a)

nondischargeability adversary proceeding against Cecil, but failed to pursue and obtain a

nondischargeable judgment against Cecil.

---

[37] Doc. No. 65, Ex. 1 at ¶8.

No debts were adjudicated to be nondischargeable in Cecil's bankruptcy case. He was granted a discharge and any claim Hefferan had against Cecil was discharged. The discharge was not limited to Hefferan's claim amount; all prepetition indebtedness was discharged. The entry of the Charging Lien Order did not affect or supersede Cecil's discharge or the discharge injunction of 11 U.S.C. Section 524(a). The discharge injunction protects Cecil perpetually, without exception.

The Florida State Court granted Hefferan's Motion for Summary Judgment pursuant to the entry of the Final Summary Judgment. Hefferan's filing and pursuit of the summary judgment proceeding against Cecil constitute actions to collect from Cecil prepetition attorney's fees which were discharged pursuant to Cecil's discharge. His attempts to enforce the Final Summary Judgment against Cecil constitute actions to collect from Cecil the discharged attorney's fees.

Hefferan's pursuit of the discharged fees has been intentional and willful. Hefferan knew the prepetition fees had been discharged by Cecil's discharge and he was enjoined from attempting to collect the discharged indebtedness. He continued to attempt to collect the discharge fees from Cecil even after the Court issued its December 1, 2009 Order enjoining him from taking any action against Cecil. Hefferan is in contempt of Cecil's discharge and this Court's December 1, 2009 Order.

### *Sanctions*

Each demand letter Hefferan issued, notice and motion he filed, and action he took in the Florida State Court to obtain and enforce the State Court Fee Orders against Cecil constitutes a separate violation of Cecil's discharge pursuant to 11 U.S.C. Section 524(a).

22

Hefferan is not an unsophisticated creditor. He is a lawyer and a practicing member of the Florida State Bar. He chose to file a proof of claim and participate in Cecil's bankruptcy case. He knew the discharge injunction arose on March 14, 2006 and intended the actions, which violated the discharge injunction. He knew the Court entered an Order on December 1, 2009 enjoining him from taking any action against Cecil regarding the discharged fees. He intentionally violated the December 1, 2009 Order by issuing the January 2010 demand letter.

Hefferan's repeated violations of Cecil's discharge were intentional, egregious, and extreme. He acted in bad faith. His conduct was vexatious, wanton, and oppressive. Hefferan willfully violated and is in contempt of Cecil's discharge and the Court's December 1, 2009 Order.

Hefferan, throughout the Florida State Court proceedings and the Bankruptcy Court proceedings, has made material misrepresentations and omissions:

1. He misrepresented to the Bankruptcy Court in the relief from stay proceeding in Valarie's case the pursuit of the charging lien against Cecil did not involve the discharged fees.

2. He had an obligation to disclose the Settlement Agreement and Settlement Agreement Order to the Bankruptcy Court and inform this Court Valarie had released Cecil from attorney fee obligations. He failed to disclose these crucial facts.

3. He did not obtain relief from the automatic stay of 11 U.S.C. Section 362 and continued to pursue the fee litigation in the Florida State Court.

4. He misrepresented to the Bankruptcy Court, in this sanctions proceeding, he is attempting to collect fees that were incurred post-discharge and not any fees that were discharged.

5. He did not account for the payments of $21,867.69 he received from Cecil and Valarie in his Florida State Court pleadings and took no action to correct the State Court judgments.

6. He misrepresented to the Florida State Court the effect of the discharge injunction. He misrepresented to the Florida State Court the discharge injunction of 11 U.S.C. Section 524 was void due to Cecil's alleged fraudulent acts with respect to the Settlement Agreement.

7. He failed to apprise the Florida State Court and this Court as to the existence and effect of Valarie's waiver of fees in the Settlement Agreement and the effect of her discharge.

8. He misrepresented to the Florida State Court and this Court he had authority to pursue Cecil for any fees.

9. He misrepresented to the Fifth DCA the status of the Bankruptcy Court sanctions proceedings.

These material misrepresentations, omissions, and actions reflect a course of conduct in which Hefferan disregarded fundamental truthfulness and disclosure requirements, the effect of the Chapter 7 discharges, and the effect of the Settlement Agreement and Settlement Order. His conduct warrants the imposition of significant sanctions.

Cecil has presented sufficient evidence to meet both the preponderance of the evidence and the clear and convincing standards of proof. He has established Hefferan knowingly, intentionally, and repeatedly violated the discharge injunction and is in contempt of Court. Cecil has established he is entitled to an award of actual damages and sanctions.

Cecil has suffered actual damages as the direct result of Hefferan's willful, intentional, and contemptuous behavior. Cecil's actual damages include significant emotional distress, aggravation, and inconvenience. His significant aggravation, emotional distress, and inconvenience are readily apparent and do not require the

presentation of medical evidence. Hefferan's conduct was so egregious and extreme it would ordinarily be expected to cause significant aggravation, emotional distress, and inconvenience. Cecil is entitled to an award of $3,000.00 for actual damages.

Hefferan has blatantly and willfully ignored the discharge injunction and the Orders of this Court. He persisted even with the sanctions matter pending against him. He has acted in bad faith. His conduct has been egregious, contemptuous, and abusive. Sanctions of $12,000.00 are due to be imposed against Hefferan.

## CONCLUSIONS OF LAW

### *Discharge Injunction and Burden of Proof*

A Chapter 7 discharge discharges a debtor "from all debts" that arose before the petition date, except for any debt determined to be nondischargeable pursuant to Section 523 of the Bankruptcy Code. 11 U.S.C. § 727(b). Section 523(a) sets forth various debts that are excepted from discharge including certain tax debts, debts arising through the debtor's fraud, student loans, and domestic support obligations. A debt is dischargeable unless and until an order is entered determining the debt to be nondischargeable pursuant to Section 523.

Cecil and Valarie were granted discharges pursuant to Section 727. No debt was adjudicated to be nondischargeable pursuant to Section 523(a). All of Cecil's and Valarie's prepetition debts were discharged pursuant to Section 727(b).

The discharge injunction of 11 U.S.C. Section 524(a) automatically and immediately arose upon the entry of Cecil's discharge enjoining:

> . . . the commencement or continuation of an action, the employment of process, or an act to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived.

25

11 U.S.C. § 524(a)(2).  A discharge:

> voids any judgment at any time obtained, to the extent that such judgment
> is a determination of the personal liability of the debtor with respect to any
> debt discharged under section 727, 944, 1141, 1228, or 1328 of this title,
> whether or not discharge of such debt is waived.

11 U.S.C. § 524(a)(1).  Section 524 "embodies the 'fresh start' concept of the bankruptcy code."  Hardy v. I.R.S. (In re Hardy), 97 F.3d 1384, 1388-89 (11th Cir. 1996).  Cecil's discharge constitutes an Order of this Court essential to his fresh start.  Id.

The automatic stay of 11 U.S.C. Section 362(a), like the discharge injunction, is a fundamental protection and integral to the fresh start provided by bankruptcy.  The automatic stay arose by operation of law immediately upon the filings of Cecil's and Valarie's bankruptcy cases.  Relief from the automatic stay may only be obtained pursuant to the entry of an order granting stay relief.  11 U.S.C. § 362(d).  Hefferan, as established by his filing of a stay relief motion in Valarie's case, knew the automatic stay arose upon Cecil's and Valarie's bankruptcy filings and he could not pursue the fee litigation against them without obtaining stay relief.  No order was entered granting stay relief and Hefferan did not obtain stay relief pursuant to 11 U.S.C. Section 362(d).

Bankruptcy Courts are empowered to award debtors actual damages and sanctions for violations of the discharge injunction of 11 U.S.C. Section 524(a) pursuant to their statutory contempt powers deriving from 11 U.S.C. Section 105.  Id. at 1389.  A creditor may be held liable for contempt pursuant to Section 105(a) for willfully violating the permanent injunction of 11 U.S.C. Section 524.  Id. at 1390.  Conduct is willful regarding a discharge violation if the creditor: "1) knew that the discharge injunction was invoked and 2) intended the actions which violated the discharge injunction."  Id. (applying the

26

Jove Eng'g, Inc. v. I.R.S. (In re Jove Eng'g, Inc.), 92 F.3d 1539, 1545 (11th Cir. 1996) willful test to § 524(a) violations).

The subjective beliefs or intent of the creditor are irrelevant. In re Hardy, 97 F.3d at 1390. Receipt of notice of a debtor's discharge is sufficient to establish the knowledge element of the two-part test. Id.

Cecil has the burden of proof to establish Hefferan violated the discharge injunction and that the violations were willful, as defined by the Eleventh Circuit. Id. Bankruptcy Courts typically apply the preponderance of the evidence standard of proof in discharge violation matters, but some apply the clear and convincing standard of proof. In re Caffey, 384 B.R. 297, 304-305 (Bankr. S.D. Ala. 2008); see Grogan v. Garner, 498 U.S. 279, 286 (1991) (applying the preponderance of the evidence standard and explaining, "We are unpersuaded by the argument that the clear-and-convincing standard is required to effectuate the 'fresh start' policy of the Bankruptcy Code"); but see In re Jove Eng'g, Inc., 92 F.3d at 1545 ("A finding of civil contempt must be based on 'clear and convincing evidence' that a court order was violated").

### Discharge Injunction Violations

Cecil has established, by the preponderance of the evidence and by clear and convincing evidence, Hefferan knowingly, intentionally, and repeatedly violated the discharge injunction. Hefferan knew Cecil was granted a discharge pursuant to 11 U.S.C. Section 727 and the discharge injunction arose by operation of law pursuant to 11 U.S.C. Section 524(a). Hefferan knew his prepetition fees had been discharged. He, despite his knowledge and understanding of the discharge injunction, repeatedly and willfully violated Cecil's discharge by attempting to collect his discharged fees.

27

The Charging Lien Order and the Final Summary Judgment contain Hefferan's discharged attorney's fees. He has attempted to enforce the post-discharge the State Court Fee Orders against Cecil knowing they contain his discharged fees. Hefferan's post-discharge issuance of demand letters, filing of the Notice of Charging Lien, institution and pursuit of the charging lien and summary judgment proceedings, and attempts to enforce the State Court Fee Orders constitute acts to collect or recover a discharged debt of Cecil. Each act constitutes a separate violation. Hefferan's actions were not mere technical violations of the discharge injunction, but were grossly egregious, willful violations.

The Final Summary Judgment was obtained by Hefferan in violation of Cecil's discharge. It was entered against Cecil and in favor of Hefferan for attorney's fees of $27,258.31 plus accumulated interest of $7,218.16. It contains Hefferan's prepetition fees and interest, which amounts were discharged pursuant to 11 U.S.C. Section 727(b). The Final Summary Judgment constitutes a determination of the personal liability of Cecil with respect to the discharged fees and is void.[38]  11 U.S.C. Section 524(a)(1); Egleston v. Egleston (In re Egleston), 448 F.2d 803, 814 (5th Cir. 2006) (voiding state court judgment containing fee awards in favor of wife that were discharged in husband debtor's Chapter 7 case).

Hefferan's repeated failures to honor the discharge injunction were intentional, egregious, and extreme. He engaged in a pattern of bad faith conduct by:  (i) making material misrepresentations and omissions to the Florida State Court and this Court; (ii) proceeding with the fee litigation in the Florida State Court without obtaining relief from

---

[38] The Charging Lien Order is not void pursuant to 11 U.S.C. Section 524(a)(1) because it is a judgment against Valarie and is not a determination of the personal liability of Cecil.

28

the automatic stay of 11 U.S.C. Section 362(a); (iii) disregarding Cecil's and Valarie's discharges; (iv) disregarding the effect of the Settlement Agreement and Settlement Agreement Order; and (v) disregarding the Court's December 1, 2009 Order. His conduct was vexatious, wanton, and oppressive. He willfully violated and is in contempt of Cecil's Discharge Order and the December 1, 2009 Order. 11 U.S.C. §§ 524(a), 105(a); In re Hardy, 97 F.3d at 1390.

Cecil has established he is entitled to an award of actual damages and sanctions. He has suffered emotional distress, aggravation, and inconvenience, which injuries are readily apparent. The circumstances surrounding Hefferan's discharge violations make it obvious a reasonable person would suffer emotional harm. In re Nibbelink, 403 B.R. 113, 120-21 (Bankr. M.D. Fla. 2009); Dawson v. Washington Mut. Bank, F.A. (In re Dawson), 390 F.3d 1139, 1151 (9th Cir. 2004). Cecil is entitled to an actual damages award of $3,000.00.

This Court is authorized to impose sanctions against Hefferan pursuant to 11 U.S.C. Sections 524(a) and Section 105(a) and the Court's inherent powers. Hefferan's actions warrant the imposition of sanctions commensurate with the degree of his discharge violations. He repeatedly violated the discharge injunction and the Orders of this Court. He acted with total disregard of the discharge injunction. He made numerous misrepresentations to this Court and the Florida State Court.

Cecil has suffered actual damages of $3,000.00 as the direct result of Hefferan's willful, intentional, and contemptuous behavior. Sanctions of $12,000.00 are due to be imposed against Hefferan due to his willful, contemptuous, and egregious conduct. The sanctions award is necessary and appropriate to enforce the provisions of the Bankruptcy

29

Code, to coerce Hefferan's compliance with the bankruptcy laws, and to redress Hefferan's bad faith, contemptuous conduct.

Cecil is entitled to an award of actual damages and sanctions of $15,000.00 pursuant to 11 U.S.C. Sections 524(a) and 105(a) and the Court's inherent powers. Chambers v. NASCO, Inc., 501 U.S. 32, 44-45 (1991); Glatter v. Mroz (In re Mroz), 65 F.3d 1567, 1575 (11th Cir. 1995).

## Conclusion

Hefferan sought the benefits of the Chapter 7 bankruptcy process by filing proofs of claim in Cecil's and Valarie's bankruptcy cases and is bound by the results. "[H]e who invokes the aid of the bankruptcy court by offering a proof of claim and demanding its allowance must abide the consequences of that procedure." Gardner v. State of New Jersey, 329 U.S. 565, 573-74 (1947).

Hefferan, by filing claims in Cecil's and Valarie's bankruptcy cases, invoked the protections of the bankruptcy process. He had a full and fair opportunity to litigate the objection to his claim, Cecil's discharge, the Trustee's Final Report, the closing of Cecil's bankruptcy case, and the closing of Adversary Proceeding No. 6:06-ap-00052. He was afforded due process. He received and accepted a distribution from the Trustee. The balance of his claim and all other prepetition indebtedness was discharged by operation of law.

Hefferan, displeased with the consequences of the bankruptcy process, has willfully ignored Cecil's discharge injunction and has aggressively pursued collection of the discharged fees in the Bankruptcy Court through Valarie's case and in the Florida State Court. He has failed to comply with Court procedures and has made material

misrepresentations to the Bankruptcy Court and the Florida State Court. The imposition of sanctions against Hefferan is justified by the egregiousness of his actions.

Accordingly, it is

**ORDERED, ADJUDGED and DECREED** that Cecil Thompson's Motion to Reopen (Doc. No. 56) and Motion for Contempt (Doc. No. 73) are hereby **GRANTED** and that, pursuant to 11 U.S.C. Sections 524(a) and 105(a) and the Court's inherent powers, actual damages of $3,000.00 and monetary sanctions of $12,000.00 are hereby awarded to Cecil Thompson and against John R. Hefferan, Jr. for a total award of $15,000.00; and it is further

**ORDERED, ADJUDGED and DECREED** that John R. Hefferan, Jr. is hereby enjoined from taking any further action to collect any attorney's fees or costs from Cecil Thompson pursuant to 11 U.S.C. Sections 524(a) and 105(a); and it is

**ORDERED, ADJUDGED and DECREED** that the Final Summary Judgment entered against Cecil Thompson containing the indebtedness discharged by Cecil Thompson's discharge, Valarie Thompson's discharge, the Settlement Agreement, and the Settlement Agreement Order is **VOID AND OF NO EFFECT** pursuant to 11 U.S.C. Section 524(a)(1) and John R. Hefferan, Jr. is directed to forthwith take all steps necessary to vacate such Final Summary Judgment; and it is further

**ORDERED, ADJUDGED and DECREED** that the Court retains jurisdiction to enforce the provisions of this Order and to assess whether the imposition of additional sanctions may be appropriate.

A separate Judgment consistent with these findings and rulings shall be entered contemporaneously.

Dated this 6th day of May, 2010.

_____
ARTHUR B. BRISKMAN
United States Bankruptcy Judge

32